IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOURCE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:00-CV-1933-N |
| | § | |
| 2ND SOURCE WIRELESS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Plaintiff Source, Inc. ("Source") and Defendant 2nd Source Wireless, Inc.'s ("2nd Source") motions for summary judgment. For the reasons stated below, 2nd Source's motion for summary judgment is granted, and Source's motion for summary judgment is denied.

### I. FACTUAL BACKGROUND

This action involves competing right to use trademarks including the word "Source" to sell telecommunications equipment. Since approximately 1971, Source has engaged in the business of selling used and new telecommunications equipment and providing associated services using the mark "SOURCE" and related marks. Source is the owner of the U.S. Service Mark Registration No. 1,539,500 for "SOURCE," registered May 16, 1989. Source is also the owner of U.S. Trademark Registration No. 1,582,363 for "SOURCE," registered February 13, 1990.

ORDER – PAGE 1

Around March 31, 1992, 2nd Source began using the mark "2ND SOURCE" in association with repair services in the field of used telecommunications equipment and for distributorship services in the field of used telecommunications equipment. Around April 6, 1992, 2nd Source filed its Application for Registration Serial No. 74/378,948 (the " '948 Application") seeking to register the service mark "2ND SOURCE" in International Class 37, for repair services in the field of used telecommunications equipment, and in International Class 42, for distributorship services in the field of used telecommunications equipment. The '948 Application was published for opposition on November 16, 1993.

That publication apparently made Source aware of 2nd Source's existence. Source filed its "Notice of Opposition" to the '948 Application on February 11, 1994. On February 28, 1994, Source sent 2nd Source a cease and desist letter. Absent response by 2nd Source, on April 25, 1994, Source filed a lawsuit against 2nd Source in this court, Civil Action No. 3:94-CV-0797-P, for infringement of Source's federally registered trademarks, among other things.

In August 1994, Source and 2nd Source entered into a settlement agreement (the "Agreement"). The Agreement provided that (1) 2nd Source assigned all its rights in the mark "2ND SOURCE," including the '948 Application, to Source; (2) Source granted 2nd Source a royalty-free five year license to use the "2ND SOURCE" mark; (3) Source granted 2nd Source the right to renew the license for successive five-year terms by giving notice to Source in the 55th month of the term; and (4) the parties dismissed the lawsuit. Source then withdrew its opposition to the '948 Application, which then matured into U.S. Servicemark

Registration No. 1,910,431 (the " '431 Registration") The '431 Registration is valid and subsisting. 2nd Source executed the Agreement on August 11, 1994.

The 55th month of the Agreement ran from February 11, 1999-March 11, 1999. 2nd Source did not give notice by the 55th month that it intended to exercise its renewal option. It appears that all parties forgot about the requirement of notice in order to renew the license. In early 2000, 2nd Source became aware of activity that it considered to be potentially infringing on the "2ND SOURCE" mark. As licensee, it notified the licensor, Source, of the potentially infringing use and asked it to take action to protect the mark by letter dated February 9, 2000. This letter appears to have stirred Source into action. On March 23, 2000, instead of providing succor and aid against a joint enemy infringer, Source sent 2nd Source a letter stating that the license under the Agreement had terminated in August, 1999, and demanding that 2nd Source cease and desist from all use of the "2ND SOURCE" mark.

2nd Source declined to cease using the mark. Instead, it sued Source in Kentucky state court, claiming breach of the Agreement. Source removed that action to federal court in Kentucky. 2nd Source successfully moved to remand the case back to state court on the basis that the amount in controversy was less than $75,000, supported by the affidavit of Jerry Grubbs stating that it would not be difficult for 2nd Source to change names and would cost less than $75,000. Source then commenced this action, relying on this Court's retention of continuing jurisdiction over the Agreement. Based on that continuing jurisdiction, this Court enjoined continued prosecution of the Kentucky state court action.

ORDER – PAGE 3

## II. SOURCE HAS ABANDONED THE 2ND SOURCE MARK

2nd Source argues that Source has abandoned the 2ND SOURCE mark by non-use. Under the terms of the Agreement, 2nd Source's use of the mark inures to Source's benefit. All parties agree that 2nd Source has continued to use the mark. Thus, if the Agreement remains in force, Source has not abandoned the mark. Accordingly, the Court first must address whether the Agreement has terminated. Ironically, Source's victory on the termination argument provides the predicate for 2nd Source's abandonment argument.

### *A. Expiration of the License*

The parties devote much of their attention to discussing which of two Texas intermediate appellate opinions accurately states Texas law on the exercise of lease options. Source argues for *Reynolds-Penland Co. v. Hexter & Lobello*, 567 S.W.2d 237, 239 (Tex. Civ. App. – Dallas 1978, writ dism'd by agmt.). *Reynolds* generally held that an option must be exercised in strict compliance with its terms, notwithstanding that the failure to timely renew was "merely" negligent. 2nd Source, on the other hand, prefers *Inn of the Hills, Ltd. v. Schulgen & Kaiser*, 723 S.W.2d 299 (Tex. Civ. App. – San Antonio 1987, writ ref'd n.r.e.). The court in *Inn of the Hills* expressly declined to follow *Reynolds-Penland*, and instead applied language from an older Texas opinion that the *Reynolds-Penland* court characterized as dicta:

> In cases of mere neglect in fulfilling a condition precedent of a lease, which do not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease.

ORDER – PAGE 4

*Inn of the Hills*, 723 S.W.2d at 301 (quoting *Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265, 272 (Tex. Comm'n App. 1939)). These two courts are not alone in reaching difference conclusions on this issue. *See generally* William B. Johnson, Annotation, *Circumstances Excusing Lessee's Failure to Give Timely Notice of Exercise of Option to Renew or Extend Lease*, 27 A.L.R.4th 266 (1984).

This Court need not resort to an *Erie* guess to decide this motion. Assuming 2nd Source is correct about the law, Source still prevails on the termination issue because the delay in notice here was not slight. The Agreement began August 11, 1994. The 55th month of the Agreement began February 11, 1999. 2nd Source never gave any notice of renewal. Assuming for the purposes of summary judgment that 2nd Source's letter about the potential infringer inferentially provided notice that 2nd Source wanted to renew the license, that letter did not come until February 9, 2000, almost a year after the time the Agreement required notice. As a matter of law, in the context of a five year extension of a license, a one year delay in notice cannot be considered "slight." Accordingly, even under the *Inn of the Hills* standard, 2nd Source cannot call on this Court in equity to cure 2nd Source's default.[1]

### B. Source Has Abandoned the 2ND SOURCE Mark

The Lanham Act provides that a mark is deemed to be abandoned:

When use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means

---

[1] In view of this determination, it is unnecessary for the Court to address Source's other arguments that 2nd Source's unclean hands preclude equitable relief.

the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127. It is undisputed that Source itself has never used the 2ND SOURCE mark. When the Agreement terminated on August 11, 1999, Source's vicarious use of the mark also terminated. As of August 11, 2002, Source had not used the mark for three years. At that point the statutory presumption of abandonment arose.

"Once the presumption is triggered, the legal owner of the mark has the burden of producing evidence of either actual use during the relevant period or intent to resume use." *Emergency One, Inc. v. American Fireeagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000). The mark owner "must come forward with objective, hard evidence of actual 'concrete plans to resume use' in the 'reasonably foreseeable future when the conditions requiring suspension abate.' " *Empressa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 268 (S.D.N.Y. 2002)(quoting *Silverman v. CBS, Inc.*, 870 F.2d 40, 46 (2d. Cir.), *cert. denied*, 492 U.S. 907 (1989)). Instead of offering objective, hard evidence of actual concrete plans to resume use, Source here argues that this litigation itself is evidence of its intent to use. "But challenging infringing uses is not use . . . ." *Silverman*, 870 F.2d at 47-48. Accordingly, Source has not rebutted the presumption of abandonment.

Moreover, 2nd Source need not rely on the presumption in this instance. Contrary to the usual case in which the mark owner offers affidavits claiming it intends to resume use,[2]

---

[2] Such affidavits are viewed skeptically by the courts. *E.g., Empressa Cubana*, 213 F. Supp. 2d at 269.

ORDER – PAGE 6

the summary judgment here expressly establishes that Source *never* intends to use the mark. In a Rule 30(b)(6) deposition of David Potter, principal of Source, Mr. Potter disclaimed any use of the 2ND SOURCE mark because Source, naturally would use the SOURCE mark:

> Q. Did, in fact, Source, Inc. ever use the term "2nd Source" by itself for itself?
>
> A. Not to my knowledge. I would doubt it.
>
> Q. Has it ever?
>
> A. I would doubt it.
>
> * * *
>
> A. I don't think it ever would because we have Source.

Defendant's Appendix at 25. Accordingly, even if the presumption did not establish abandonment, the summary judgment proof directly establishes that Source has no intent ever to use the 2ND SOURCE mark. The Court holds as a matter of law that Source has abandoned the 2ND SOURCE mark.

## CONCLUSION

The Court's Order will terminate the instant litigation. The Court sadly recognizes that this Order is unlikely to end the disputes between Source and 2nd Source. The net result of this Order is to restore the parties to the position they were in prior to the Agreement. If the Agreement represented a sensible business accommodation between the parties in 1994, the Court hopes that some similar business accommodation will still make more sense to the

ORDER – PAGE 7

parties today than continuing to devote their respective corporation's resources to more litigation.

SIGNED this _1_ day of November, 2002.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 8